## THE HUDSON, etc., and another.

(*District Court, S. D. New York.* November 24, 1882.)

COLLISION—RULES OF NAVIGATION.

> A steam-tug having another tug, with which there is danger of collision, on her own port hand, is bound by the twenty-third rule to keep her course; and it is no defense to a violation of this rule to show that she blew two whistles, and at once sheered to port in order to give the other tug more room to cross her bows, on the supposition that the other tug designed to cross the stream, the latter not having given any answering signals assenting to this maneuver; and where a collision ensued from such change of course, the former was held liable.

In Admiralty.

*E. D. McCarthy*, for libelant.

*Benedict, Taft & Benedict* and *S. H. Valentine*, for the Hudson.

*Scudder & Carter* and *G. A. Black*, for the Yosemite.

BROWN, D. J. The libel in this case was filed by the owner of the canal-barge Shoe, to recover damages for a collision on the fourth of February, 1880, with the schooner Yosemite, in Buttermilk channel, whereby the barge was sunk. The Yosemite was in tow of the steam-tug Hudson, upon a hawser about 200 feet long. As they were coming up about the middle of Buttermilk channel, with a strong flood-tide, the captain of the Hudson, when about abreast of the black buoy, saw the steam-tug E. A. Packer, with the Shoe in tow, lashed upon her starboard side, coming down the stream near Governor's island, and not far from the government docks. Shortly afterwards he gave two blasts of his whistle, and, without waiting for any reply, he immediately starboarded his helm, designing to go to the left, between the E. A. Packer and Governor's island. In doing so the Hudson went about 75 feet clear of the barge, but the Yosemite, unable to keep in the wake of the Hudson, and being swept further out by the strong tide, was drawn against the stem of the barge and sunk her. Those on board of the Yosemite did all that they could to keep away from the barge, and no fault being found in them, the libel, as to the Yosemite, must be dismissed, with costs.

The Hudson was plainly in fault, and must be held liable on several grounds. The E. A. Packer, with her tow, having a strong adverse tide out in the stream, was making her way just inside of the eddy, along the line of the shore, and at a distance of from 150 to 200 feet therefrom. When first seen from the Hudson she was above the elbow formed by the shore line below the government docks, and was therefore pointing somewhat across the channel and towards the

Brooklyn shore.   The Hudson was on her starboard bow, while, according to the preponderance of testimony, the Hudson, before her change of course, had the E. A. Packer somewhat on her port bow. In this situation, under rules 19 and 23, it was the duty of the Hudson to keep her course, and the duty of the E. A. Packer to keep out of the way.   There is no reason to suppose the Packer would not have done so if the Hudson had held her course, according to the twenty-third rule, as there was plenty of sea-room and no obstructions.   The Hudson's strong sheer to port, under a starboard helm, in violation of the rules, led directly to the collision, and for this the Hudson must be held liable.   The excuse given by her captain, that from the way the Packer was heading he supposed she was going across the stream to the coal-docks below Hamilton ferry, cannot be admitted as sufficient to exonerate the Hudson.   Not only was this surmise as to the destination of the Packer incorrect, but the excuse, if allowed, would defeat one of the very objects of the rules of navigation, which is to establish certainty in navigation, instead of the uncertainty dependent upon surmises.   It was the manifest duty of the Hudson to observe the rule and keep her course, at least until a different course was agreed upon by both vessels through the exchange of mutual signals. The captain of the Hudson did not do this; but, incorrectly assuming that the Packer was designing to cross the stream when she was merely keeping the line of the shore, and intending to continue down within the eddy, assumed also the responsibility and the risk of violating the rules by blowing two whistles and immediately making a strong sheer to port, without waiting for any signals of assent from the Packer, which, in fact, were never given.

All the circumstances of the case, moreover, rendered the maneuver of the Hudson a rash one, except upon the assured co-operation of both tugs after mutual assenting signals.   The Packer was moving slowly, within a slight downward eddy near the shore; the Hudson was going at the rate of some six or seven miles per hour, in the full strength of the flood-tide; and when the Hudson whistled, the tugs were only about a quarter of a mile, or less than two minutes, apart. In taking a strong sheer to port, out of the tide and into the eddy, so as to pass between the Packer and Governor's island, it was manifest that the Yosemite, on a hawser 200 feet long, could not be kept so far in shore as the Hudson, but would necessarily be swept along somewhat outward by the strong flood-tide, thus rendering any nice calculations as to her exact course impossible, and the maneuver a very hazardous one within the narrow space allowed available.

The prevailing reason for the Hudson's course seems, however, to have been the captain's preference for the westerly fork of the channel around Diamond reef, instead of the easterly one. But it was proved on the trial that the easterly one was equally safe, and was then unobstructed: so that no weight can be given to that consideration.

The Packer not being sued, I have not considered whether or not she was in fault for not doing all she could to avoid the collision.

The libelant is entitled to judgment against the Hudson, with costs, and to an order of reference to ascertain the damages.